**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    CRIMINAL ACTION

**VERSUS**                                              **No. 25-273**

**TRAVIS RONDALE BURNS**                         SECTION I

**ORDER & REASONS**

The indictment in the above-captioned matter charges Travis Rondale Burns ("Burns") with one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[1]

Before the Court is Burns's motion[2] to suppress all evidence seized during an October 13, 2025, traffic stop, which Burns contends occurred because of an officer's allegedly unconstitutional utilization of an expired GPS tracking device. The government filed a response[3] in opposition as well as a supplemental memorandum[4] in support of its response. With leave of Court, Burns filed a reply.[5] Considering the parties' arguments and relevant caselaw, the Court denies Burns's motion.

**I.    BACKGROUND**

On August 27, 2025, Special Agent Matthew Hodge ("Agent Hodge"), an agent with U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), applied for a GPS tracking warrant pursuant to 18 U.S.C.

---

[1] *See* R. Doc. No. 1.
[2] R. Doc. No. 25.
[3] R. Doc. No. 27.
[4] R. Doc. No. 29.
[5] R. Doc. No. 31.

§ 3117 and Federal Rule of Criminal Procedure 41.[6] The application sought to affix a tracking device to Burns's 2021 Silver Chevy Silverado 1500 (Burns's "vehicle").[7] In the affidavit in support of the warrant application, Agent Hodge explained that the government had received reliable information from a Confidential Source ("CS") that Burns used his vehicle to "regularly" travel to Houston, Texas to "pick up narcotics to sell."[8] As he further explained in his affidavit, he corroborated the CS's information by "utilizing databases that track license plate information" to "create a timeline" of Burns's travel to Texas.[9] The timeline revealed that Burns "travels regularly to Houston, Texas in [his vehicle] for quick turnaround trips conducted on the same day, and these trips are typically every nine (9) to ten (10) days."[10] Agent Hodge also provided in his affidavit that phone evidence revealed that "on dates Burns travelled to Houston from Houma, Burns was . . . in contact with individuals who have extensive criminal histories involving narcotics distribution."[11]

According to Agent Hodge's affidavit, he had "not been able to identify where in Houston, Texas, Burns travel[sic] to or who he meets with to obtain his supply of [narcotics]."[12] The tracking device would therefore assist in "identifying Burns' drug trafficking routes, co-conspirators, and drug stash locations."[13]

---

[6] *See* R. Doc. No. 25-2, at 1.
[7] *See id.*
[8] *Id.* at 4, ¶ 7.
[9] *Id.* at ¶ 8.
[10] *Id.*
[11] *Id.*
[12] *Id.* at ¶ 9.
[13] *Id.* at 5.

U.S. Magistrate Judge Donna Currault issued the warrant that same day, on August 27, 2025.[14] The face of the warrant stated:

> **YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by <u>September 6, 2025</u> *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until <u>October 11, 2025</u> *(no later than 45 days from the date this warrant was issued).*[15]

It also ordered that the warrant be returned to the Duty Magistrate Judge within "10 calendar days after the use of the tracking device has ended."[16] Agent Hodge placed the tracking device on Burns's vehicle two days later, on August 29, 2025.[17]

The GPS location data shows that Burns traveled between Louisiana and Texas multiple times during this 45-day period.[18] On September 21, 2025, Burns traveled from Louisiana to Texas, and the tracker affixed to his vehicle remained in Texas until October 13, 2025.[19] That day, two days after the warrant had expired, Agent Hodge used the GPS tracker and observed that Burns was returning to Louisiana from Texas.[20] According to Agent Hodge's report, he then "contacted Louisiana State Police . . . Trooper . . . Mackenzie Mc[K]ee to conduct a traffic stop on Travis Burns."[21]

---

[14] *See id.* at 9.

[15] *Id.* (emphasis in original).

[16] *Id.*

[17] *See* R. Doc. No. 25-4, at 2.

[18] *See generally* R. Doc. No. 25-3.

[19] *See id.* at 203–46.

[20] *See id.* at 245–58.

[21] R. Doc. No. 25-5, at 2 (cleaned up). The Court utilizes the spelling of Trooper McKee's last name reflected in the signature block of his offense/incident report. *See* R. Doc. No. 25-7, at 1.

Trooper McKee's report states that he "was in the area" of U.S. Interstate 90 "near mile post 185" when he observed Burns traveling eastbound in his vehicle "with illegal window tint."[22] He proceeded to get "behind the vehicle" which allowed him to "observe[] it following [another] vehicle too close."[23] Trooper McKee then attempted to make a traffic stop by engaging his vehicle's overhead emergency lights and sirens.[24] Burns did not stop immediately and instead continued to travel eastbound on I-90.[25] After approximately 2 miles in pursuit, Trooper McKee observed Burns throw "a white bag out of his passenger side window, over the elevated portion of [U.S. I-90 East] near Deadwood Road."[26] Burns eventually stopped approximately one quarter of a mile after throwing the bag.[27]

Trooper McKee and Trooper Simon Braud, who had been traveling directly behind Trooper McKee during his pursuit of Burns, ordered Burns to get out of his vehicle.[28] "[W]hen [Burns] opened the driver's door," Trooper McKee "could smell a very strong odor of marijuana emitting from the vehicle."[29] Burns was taken into custody by Trooper Braud and Houma Police Detective Neil Abbott, who was also on the scene.[30] Trooper McKee then drove to Deadwood Road, where he expected the

---

[22] R. Doc. No. 25-7, at 3.
[23] *Id.*
[24] *Id.*
[25] *See id.*
[26] *Id.*
[27] *Id.*
[28] *See id.*
[29] *Id.*
[30] *Id.*

white bag thrown by Burns was located.[31] Trooper McKee found and seized a bag from a "swampy area" near the overpass.[32] It contained what was later confirmed to be cocaine.[33]

Back at the location of Burns's vehicle stop on I-90, Terrebonne Parish K-9 Deputy Mason Naquin had his canine conduct an open-air sniff around Burns's vehicle.[34] The canine "alerted to the smell of narcotics emitting from the vehicle," which prompted Trooper Braud to search Burns's vehicle.[35] Trooper Braud seized the following items from a black bag on the passenger seat: "1-plastic bag containing approximately 3g of suspected marijuana, 1-plastic canister containing suspected THC wax, and 1 plastic bag containing 2g of suspected Psilocybin mushrooms."[36] He also seized "1-plastic bag containing an unknown amount [of] suspected Xanax pills and hydrocodone pills (suspected to be enough for distribution, and packaged for distribution) from Mr. Burns's right pocket, 2 suspected marijuana cigarettes from the ash tray, and . . . 4- Pitolisant pills and 4- Tamsulosin Hydrochloride in the center console compartment of the vehicle."[37] Trooper Braud also seized three cell phones and Burns's wallet.[38]

---

[31] *See id.*
[32] *Id.*
[33] *Id.*; *see also* R. Doc. No. 25-8, at 2.
[34] R. Doc. No. 25-7, at 3.
[35] *See id.*
[36] *Id.*
[37] *See id.*; *see also* R. Doc. No. 25-6, at 6.
[38] R. Doc. No. 25-7, at 3.

Burns filed a motion to suppress on March 5, 2026.[39] He contends that all evidence obtained on October 13th must be suppressed "because the Government obtained the evidence through its use of an unconstitutional, warrantless GPS search."[40] He urges that the search was "warrantless" because the government used the GPS tracker beyond the date it was authorized to do so.[41] This, he argues, violated the Fourth Amendment and requires suppression.[42]

Burns also argues that regardless of whether there existed probable cause from the traffic stop to search his vehicle and seize evidence therefrom, such evidence must be suppressed because it is "fruits of the unconstitutional GPS search."[43] The fact that Trooper McKee may have observed alleged traffic violations that separately prompted the stop, such observations cannot cure the constitutional deficiency; according to Burns, Agent Hodge "explicitly directed Trooper Mc[K]ee to stop him"[44] and the "unlawful GPS monitoring" put Trooper McKee in the position to observe and stop him.[45] Therefore, Burns submits, "the stop was not a routine, happenstance traffic enforcement action, but was instead a directed interdiction effort triggered by

---

[39] *See* R. Doc. No. 25.

[40] R. Doc. No. 25-1, at 3.

[41] *Id.* ("The warrant authorized use of the tracker only 'until October 11, 2025 (no later than 45 days from the date this warrant was issued),' yet HSI continued using the device and monitoring location data through October 13."); *id.* at 6 ("The resulting October 13 monitoring and use of GPS data to track Mr. Burns on the highway occurred after the warrant's explicit expiration and was therefore a warrantless search.").

[42] *Id.* at 3.

[43] *Id.* at 7.

[44] *Id.*

[45] *Id.* at 8, 10.

the unlawful GPS monitoring and location data."[46] For similar reasons, Burns argues that the bag of cocaine thrown out the window was not "abandoned" because "abandonment is not voluntary when it is the product of illegal police conduct."[47] Burns concludes that "[w]hen the Government uses unlawfully obtained location information to put a trooper in position to initiate the encounter, the resulting evidence seized is derivative of the unconstitutional search" and must be suppressed.[48]

The government concedes that the miscalculation of the applicable warrant termination date and use of the GPS tracker beyond October 11th amounts to a Rule 41 violation.[49] However, the government insists that suppression is not warranted because Agent Hodge acted in good faith.[50] It argues that Agent Hodge's "miscalculation was not deliberate, reckless, or grossly negligent as he reasonably believed the 45-day window began when he executed the warrant" on August 29,

---

[46] *Id.* at 8–9.

[47] *Id.* at 7. The government does not meaningfully argue in its response that the bag was abandoned. *See generally* R. Doc. No. 27-1. It merely states in its concluding paragraph: "The cocaine seized in this case does not stem from a search of defendant's property but was rather collected off of a public roadway after defendant discarded this property." *Id.* at 21. The Court therefore understands the government to not be arguing abandonment.

[48] *See* R. Doc. No. 25-1, at 9.

[49] R. Doc. No. 27-1, at 1.

[50] *Id.* at 7–8. It is difficult to give credence to the government's argument that Agent Hodge "reasonably believed the 45-day window began when he executed the warrant," considering the face of the warrant explicitly states that the 45-day period ran "from the date this warrant was *issued.*" *See* R. Doc. No. 25-2, at 9 (emphasis added).

2025.[51] The government contends that this is, therefore, not the type of conduct that supports application of the exclusionary rule.[52]

Further, according to the government's recitation of facts, Agent Hodge accessed the GPS data in order to retrieve the tracker from Burns's vehicle[53] and he "did not order Trooper McKee to stop the vehicle, but rather informed Trooper McKee that he suspected the vehicle was involved in drug trafficking and was likely traveling through Highway 90."[54] According to the government, Trooper McKee knew only: "the type of vehicle defendant was driving, [that Agent] Hodge suspected the defendant and vehicle were involved in drug trafficking, and [that] the vehicle was likely traveling along Highway 90;"[55] he had no knowledge of the tracking warrant or GPS tracker.[56]

From this, the government urges that although "the information provided by [Agent] Hodge alerted Trooper McKee to the defendant's vehicle," Trooper McKee acted on his "observation of two traffic violations, followed by defendant's refusal to pull over and his decision to throw an object out of the window," which the government states "gave Trooper McKee the probable cause to suspect the vehicle contained contraband or evidence of a crime."[57] Accordingly, it is the government's position that the evidence "seized in this case do[es] not stem from the collected GPS

---

[51] R. Doc. No. 27-1, at 7.
[52] *Id.*
[53] *See id.* at 2–3.
[54] *Id.* at 3.
[55] *Id.* at 13.
[56] *Id.* at 12–13.
[57] *Id.* at 13.

data but rather from the traffic stop conducted on defendant's vehicle after Trooper McKee developed independent probable cause to stop the vehicle."[58]

Finally, the government argues that the inevitable discovery exception to the exclusionary rule applies.[59] The government explains that there was an active arrest warrant for Burns during this timeframe which would have "given agents authority to approach and arrest" Burns.[60] The government also highlights that another officer on the investigation team, HSI Task Force Officer Roy Williams, was receiving text and email alerts from a national license plate reader system that provided updates on the movement of Burns's vehicle, which "even without the GPS data" would have given the "investigative team . . . an alternative way of receiving updates on the location of Burns's vehicle."[61]

The government also seems to argue that because the warrant requires that the tracking device be removed within 10 days after authorized use has ended, and because Burns was in Texas until October 13th, Agent Hodge's "only option was to approach defendant's vehicle to remove the tracking device."[62] Taken together, the government asserts that these facts demonstrate it "was actively pursuing a

---

[58] *Id.* at 12.

[59] *See id.* at 19–20.

[60] *Id.* at 20.

[61] *Id.* The government's supplemental memorandum cites the Fifth Circuit's decision in *United States v. Elijah Porter*, No. 25-60163, R. Doc. No. 89 (5th Cir. Mar. 17, 2026). *See* R. Doc. No. 29, at 1. It argues that this decision is "the most recent Fifth Circuit analysis of warrantless vehicle searches as well as license plate readers." *Id.* The Court finds *Elijah Porter* inapplicable considering the basis upon which the Court decides this motion.

[62] *Id.* at 19.

substantial alternative line of investigation into [Burns's] location" and that "there is a reasonable probability that the evidence in question would have been discovered without the GPS data from October 12 and 13, 2025."[63]

In his reply, Burns reiterates his position that this was a warrantless, presumptively unreasonable search that "should be analyzed as a warrantless search under the Fourth Amendment, not merely as a Rule 41 timing defect." [64] However, he also argues that even if the Court evaluates this as a Rule 41 defect that does not rise to constitutional proportions, there is sufficiently demonstrated prejudice such that the evidence is not saved from suppression.[65]

He also insists that the good faith exception does not apply "merely because an officer believed he was acting lawfully,"[66] and, therefore, does not apply to Agent Hodge's miscalculation. Agent Hodge did not "rely on a close legal question about time computation,"[67] he simply mistakenly applied Rule 41 and ignored "the warrant's express expiration date."[68] Moreover, the mistake was his own; this is not a situation where Agent Hodge relied in good faith on the validity of a warrant based

---

[63] *Id.* at 20.

[64] R. Doc. No. 31, at 3.

[65] *See id.* at 7.

[66] *See id.* at 4.

[67] *Id.* at 5. Burns preemptively argued in his motion to suppress that Rule 45(a), which delineates the rules for "computing any time period specified in [the Federal Rules of Criminal Procedure] . . . that does not specify a method of computing time," would not apply to the facts of this case because the tracking warrant set a "date-certain cutoff" of October 11, 2025. *See* R. Doc. No. 25-1, at 4–5. The government did not make that argument, *see generally* R. Doc. No. 27, and the Court therefore does not address the same.

[68] *Id.*

on a remote custodian's administrative error—"[i]t is the executing team's own continued use of a search device after judicial authorization ended."[69] According to Burns, such mistakes cannot support a finding of good faith where the officer's interpretation of the law is not objectively reasonable.[70]

Lastly, he disagrees that the inevitable discovery doctrine applies, because he contends that the inevitability of discovering the evidence by any of the alternative means proffered by the government is "speculative."[71] The government cannot show that it was actively pursuing these alternative lines of investigation at the time of the alleged constitutional violation.[72] Burns submits that the Court should "at minimum" hold an evidentiary hearing to:

> resolve any outstanding material disputes, including the nature and timing of the post-expiration monitoring, the precise content of communications between Agent Hodge and Trooper Mc[K]ee, whether Trooper Mc[K]ee actually observed a traffic violation, and whether any alternative investigative methods were actually active and likely to locate Mr. Burns at the relevant time without relying on GPS.[73]

As will be developed below, because this motion is resolved on the parties' Rule 41 arguments, the Court will not reach the parties' arguments regarding good faith and inevitable discovery. In addition, because the facts relevant for resolution of the Rule 41 issue are not in dispute, the Court finds that an evidentiary hearing is unnecessary. *United States v. Rogers*, 481 F. App'x 157, 158 (5th Cir. 2012)

---

[69] *See id.*
[70] *Id.*
[71] *Id.* at 12.
[72] *Id.* at 11–13.
[73] *Id.* at 2, 14.

11

("Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." (quoting *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)).

## II.   STANDARD OF LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). The U.S. Supreme Court's Fourth Amendment jurisprudence has established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Id.* "The exclusionary rule reaches not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it—so-called 'fruit of the poisonous tree.'" *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018). A party urging a motion to suppress evidence "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).

Fourth Amendment violations, however, do not invariably lead to the suppression of evidence. *United States v. Ganzer*, 922 F.3d 579, 586 (5th Cir. 2019) ("[W]hether a Fourth Amendment violation exists and what type of violation is present are separate and distinct questions from the question of whether the sanction of exclusion is appropriate in a certain case."). The good-faith exception states that

the exclusionary rule does not apply when an officer obtains evidence in "objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 921 (1984)). That inquiry is "confine[d] . . . to 'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Brown*, 567 F. App'x 272, 281 (5th Cir. 2014) (quoting *id.* at 922 n. 23)). Normally, "a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting a search." *United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022) (citation modified).

This good-faith exception exists because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. "[W]hen an officer executes a warrant in good faith, the deterrent effect of the exclusionary rule on that officer does not trump the costs of suppressing reliable physical evidence, even if the search is subsequently found violative of the Fourth Amendment." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005).

Similarly, violations of Federal Rule of Criminal Procedure 41 are not necessarily constitutional violations that demand suppression. *See United States v. Perdue*, 237 F. Supp. 3d 471, 477–78 (N.D. Tex. 2017) (holding that a Rule 41 violation is not "a *per se* constitutional violation"); *United States v. Wygant*, No. 18-167, 2019 WL 2928925, at *1 (W.D. Pa. July 8, 2019) ("[V]iolations of Rule 41 do not necessarily rise to the level of a constitutional violation."); *cf. United States v. Neal*, 182 F. App'x

13

366, 371 (5th Cir. 2006) ("Violations of Rule [41(f)] are essentially ministerial in nature . . . ); *United States v. Tedford*, 875 F.2d 446, 451 (5th Cir. 1989) (finding a Rule 41(c) violation but nonetheless finding suppression was not appropriate); *United States v. Comstock,* 805 F.2d 1194, 1207 (5th Cir. 1986).

In *United States v. Comstock*, the Fifth Circuit established a framework for determining whether suppression is warranted for violation of Rule 41. *See* 805 F.2d at 1207. It held:

> where there is no constitutional violation nor prejudice in the sense that the search would likely not have occurred or been as abrasive or intrusive had Rule 41 been followed, suppression in these circumstances is not appropriate if the officers concerned acted in the affirmative good faith belief that the warrant was valid and authorized their conduct. Good faith in this context implies not only that Rule 41 was not knowingly and intentionally violated, but also that the officers did not act in reckless disregard or conscious indifference to whether it applied and was complied with. On the other hand, for these purposes, we do not mean by "good faith" that the officers' conduct must be objectively reasonable.

*Id.* It adopted the test used in both the Ninth and Eleventh Circuits that:

> Unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where, (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Id.* at 1206–07 (quoting *United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1981) and citing *United States v. Loyd*, 721 F.2d 331, 333 (11th Cir. 1983)). The Fifth Circuit recognized that this standard is "less stringent" than *Leon* good faith, but it nonetheless reasoned that such a standard is "appropriate" where there is no "unconstitutional conduct." *Id.* at 1207. "Legal prejudice and intentional non-

14

compliance are alternative grounds for suppressing evidence based on a Rule 41 violation." *United States v. Wijetunge*, No. 15-144, 2015 WL 5098667, at *6 (E.D. La. Aug. 31, 2015) (Africk, J.) (citing *Neal*, 182 F. App'x at 371)). It is the defendant's burden to "establish legal prejudice or intentional or bad-faith non-compliance with the rule." *Id.*; *see also Neal*, 182 F. App'x at 371. The "fruit of the poisonous tree doctrine" is not triggered by Rule 41 violations that do not rise to constitutional proportions. *Tedford*, 875 F.2d at 451.

### III.    ANALYSIS

### *a.    Comstock* **applies and counsels against suppression**

Burns contends that the GPS search on October 13th was a Fourth Amendment violation, and not a mere technical defect, because after the warrant's expiration on October 11th, any subsequent tracking search "became warrantless and was therefore presumptively unreasonable."[74]

The government concedes that the miscalculation of the 45-day window amounts to a Rule 41 violation,[75] however, it argues that such violation was merely "technical" rather than "fundamental" error.[76] As the government points out, there is no dispute that the GPS warrant was a validly issued warrant because it "was

---

[74] R. Doc. No. 25-1, at 3, 5–6; R. Doc. No. 31, at 1 ("[O]nce judicial authorization ended, continued tracking was warrantless and presumptively unreasonable."); *id.* at 2 ("The relevant illegality in this case is a warrantless search, not a technical or administrative error.").

[75] R. Doc. No. 27-1, at 1.

[76] *See id.* at 8.

supported by probable cause and properly issued."[77] This is not a case where the "tracking device placed on [Burns's] vehicle was placed without anyone ever obtaining a warrant authorized by a judge."[78] As such, so goes the government's argument, the Fifth Circuit's test from *Comstock* applies.[79]

According to the government, suppression is not warranted pursuant to *Comstock* because: Agent Hodge's "miscalculation of the 45-day window to collect GPS data was not deliberate . . . and it was not an intentional disregard of Rule 41;" and "the search of defendant's vehicle and seizure of narcotics would have happened absent of[*sic*] this Rule 41 violation as Trooper McKee developed independent probable cause to stop the vehicle."[80]

In his supplemental response, Burns contends that the government's argument with respect to the initial validity of the warrant "misses the point."[81] He states that the "constitutional problem is not the initial issuance of the warrant," but "the continued use of a GPS device after judicial authorization ended."[82] He insists that: "Once the warrant's express endpoint passed, continued monitoring was no longer 'pursuant to a valid warrant,' and thus became a warrantless search presumptively unreasonable under the Fourth Amendment."[83] Consequently, Burns

---

[77] *Id.* at 6 ("In this case, there is no dispute the tracker warrant authorized by Judge Currault was supported by probable cause and properly issued. Thus, the GPS data collected in this case was pursuant to a valid warrant issued upon probable cause.").
[78] *Id.* at 12.
[79] *See id.* at 8–9.
[80] *Id.* at 10.
[81] R. Doc. No. 31, at 2.
[82] *Id.*
[83] *Id.* at 3.

submits that this is a "straightforward Fourth Amendment violation" rather than a Rule 41 issue.[84]

The Court cannot agree with Burns's conclusion that a search conducted pursuant to a warrant that has expired automatically becomes "warrantless." *Cf. Groh v. Ramirez*, 540 U.S. 551, 573–74 (2004) (Thomas, J., dissenting) ("Our cases involving 'warrantless' searches do not generally involve situations in which an officer has obtained a warrant that is later determined to be facially defective, but rather involve situations in which the officers neither sought nor obtained a warrant.").[85]

"The Fourth Amendment does not specify that search warrants contain expiration dates." *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993) (cleaned up). "As many circuits have recognized, the Fourth Amendment contains no requirements about when the search or seizure is to occur or the duration." *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (internal alterations and quotations omitted) (citing *id*.)). Still, the "general touchstone of reasonableness which governs [the] Fourth Amendment analysis . . . governs the method of execution

---

[84] *See id.* at 6.

[85] Although the Supreme Court in *Groh* found that the warrant was so "obviously deficient" that the subsequent search "must [be] regard[ed]. . . as 'warrantless,'" the Court cannot make such a leap here. *Cf. Groh*, 540 U.S. at 558. The Court in *Groh* regarded the search as "warrantless," despite a warrant being procured, because "the warrant did not describe the items to be seized at all." *Id.* But unlike the Fourth Amendment's explicit requirement that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized," the Fourth Amendment does not similarly require that search warrants contain expiration dates. *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017); *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993).

of the warrant," *id.* at 266, meaning, "[t]he Fourth Amendment independently commands that search warrants be executed within 'a reasonable time,'" *United States v. Hernandez*, 167 F.4th 1113, 1126 (11th Cir. 2026) (citing *id.*).

The relevant inquiry for determining if the Rule violation was fundamental, therefore, is whether the search violated the Fourth Amendment because the delay in execution was unreasonable or otherwise rendered the "probable cause that justified the warrant . . . stale or dissipated." *See Jarman*, 847 F.3d at 266; *United States v. Nicholson*, 24 F.4th 1341, 1351 (11th Cir. 2022) ("[W]hen the police complete a search after the deadline in a warrant, the key constitutional question is whether the probable cause that justified the warrant went stale or dissipated because of the delay.").

Burns asserts, in conclusory fashion, that the October 13th search was unconstitutional.[86] Yet he cites no cases supporting that the two-day delay in executing the search warrant was constitutionally unreasonable, nor has he argued that the information supporting the search warrant was insufficient to establish probable cause at issuance or that such probable cause dissipated or became stale in the two-day delay in executing the search warrant. *See Nicholson*, 24 F.4th at 1351. He relies only on the unremarkable proposition that warrantless searches are

---

[86] *See, e.g.*, R. Doc. No. 25-1, at 6, 7.

presumptively unreasonable[87] and his belief that "[o]nce the warrant's express endpoint passed, continued monitoring . . . bec[o]me[s] a warrantless search."[88]

Such conclusion is inconsistent with the many cases inside and outside of this Circuit, that have analyzed searches conducted pursuant to an expired warrant not as warrantless searches presumptively unreasonable under the Fourth Amendment but, instead, as non-fundamental violations for which *Comstock* or a similar framework is appropriate. *See, e.g., United States v. Koutsos*, No. 17-77, 2018 WL 1514409, at *2 (S.D. Miss. Mar. 27, 2018) (holding, pursuant to *Comstock*, that the government's execution of a search warrant two days past its expiration, which violated the warrant's requirements, did not require suppression);[89] *Gerber*, 994 F.2d

---

[87] *See id.* at 6.

[88] R. Doc. No. 31, at 3. Burns cites two cases in his reply in support of his conclusion. *See id.* (citing *Sgro v. United States*, 287 U.S. 206, 210–11 (1932) and *United States v. Woerner*, 709 F.3d 527, 531–33 (5th Cir. 2013)). Burns contends that the court in *Sgro* "treated the warrant as void once the authorized execution period expired." *Id.* But such conclusion ignores that the statute authorizing the warrant in *Sgro* explicitly stated that warrants were void once expired. *Sgro,* 287 U.S. at 210. No such language exists in Rule 41 or the Fourth Amendment. *See* FED. R. CRIM. P. 41(e), (f); U.S. Const. amend. 4. As for *Woerner*, the Fifth Circuit only briefly mentions that the district court suppressed evidence seized from the defendant's home pursuant to an expired state search warrant; it does not evaluate the accuracy of that ruling. *See Woerner*, 709 F.3d 533. While the underlying district court ruling suppressing the evidence supports Burns's position that a search conducted two days after a search warrant's expiration is "warrantless," *see United States v. Warner*, No. 10-953, R. Doc. No. 69, at 15–18 (S.D. Tex.), that decision was made, in part, by rejecting the Eighth Circuit's ruling in *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009), which the Fifth Circuit thereafter cited favorably in *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017). Notably, the district court in *Woerner* also did not explore whether *Comstock* applied. *See generally id.* The Court therefore finds the authority cited by Burns unpersuasive.

[89] Burns argues in his reply that reliance on *Koutsos* is "misplaced" because that case involved "delayed forensic review of lawfully seized evidence," whereas the present case "involves the Government's continued use of a GPS tracking device after a date-

at 1560 (holding suppression was not warranted where the search warrant that had expired on a Friday was executed "the next business day, the following Monday" because the search was "reasonable and well founded on probable cause" and the agents did not "delay the search deliberately or in bad faith"); *Wygant*, No. 18-167, 2019 WL 2928925, at \*2 (declining to suppress evidence seized from a residence pursuant to a warrant mere hours after its expiration date because "[p]robable cause did not extinguish at 11:59 p.m. on May 21, 2018 – the command date on the warrant" and the executing officer "believed he was complying with the dictates of the warrants when he executed them on May 22, 2018"); *United States v. Chambers*, No. 07-15, 2007 WL 2872406, at \*1 (S.D. Miss. Sept. 27, 2007) (holding that the evidence obtained pursuant to a search warrant executed slightly more than two days beyond its expiration did not require suppression because there was "no showing that the delay was the result of intentional disregard of the warrant terms," "no showing that probable cause was affected," and no prejudice);[90] *cf. United States v. Jarman*, 847

---

certain expiration to generate real-time location information and then exploiting that information to place Trooper McKee in position to stop Mr. Burns." *Id.* at 6. Burns explains that this distinction makes a difference because "the overrun [in *Koutsos*] did not create the encounter that produced the evidence." *Id.* This argument goes to whether the violation prejudiced Burns, not whether *Koutsos* supports a position that *Comstock* applies to such violations. The Court here cites *Koutsos* solely in support of its position that warrants executed beyond their expiration dates are not *per se* warrantless searches in violation of the Fourth Amendment.

[90] The Court recognizes that the present dispute differs from the cited cases because the search conducted in this case violated the expiration date on the face of the warrant *and* was conducted beyond the 45-day period articulated in Rule 41(e)(2)(C), whereas the cited authority involved situations where officers violated the face of the warrant but nonetheless conducted the search within the timeframe articulated in Rule 41. *See Chambers*, 2007 WL 2872406, at \*1; *Koutsos*, 2018 WL 1514409, at \*1–2; *Wygant*, 2019 WL 2928925, at \*1–2; *Gerber*, 994 F.2d at 1557. However, separate

20

F.3d 259 (5th Cir. 2017) (finding that the eight month delay in post-seizure review of the defendant's computer data, which violated Rule 41, did not violate the Fourth Amendment because delay was not unreasonable); *Raouf v. United States*, 16-826, 2018 WL 4845742, at *2 (D. Conn. Oct. 4, 2018) (holding in the context of an ineffective assistance of counsel claim that use of a GPS tracking device for more than 45 days, in violation of Rule 41(e)(2)(C), "does not support exclusion of evidence unless the defendant shows that the search might not have occurred had the rule been followed or the record reflects an intentional violation of the rule").

Consequently, the Court will not afford a search conducted pursuant to an expired search warrant the presumption of unreasonableness that attaches to warrantless searches. Instead, the Court finds it appropriate to employ *Comstock's* two-prong test to determine if suppression is warranted.

Burns does not dispute that Agent Hodge did not intentionally or deliberately disregard the warrant's expiration date, as is required for the second *Comstock* prong.[91] Rather, he insists that he was prejudiced within the meaning of the first *Comstock* prong because "the October 13 tracking data was used to identify the vehicle's return and to initiate contact with" Trooper McKee, meaning, "the

---

caselaw cited herein supports the proposition that Rule 41 violations do not necessarily amount to constitutional violations. *See Perdue*, 237 F. Supp. 3d at 477–78; *Neal*, 182 F. App'x at 371; *Tedford*, 875 F.2d at 451; *Comstock*, 805 F.2d at 1207. The Court cites these cases in support of the finding that courts do not treat searches conducted shortly after a warrant has expired as warrantless searches that are cloaked with a presumption of unreasonableness.

[91] *See* R. Doc. No. 31, at 6–7.

challenged stop and the ensuing seizure 'might not have occurred' in the same manner—or at all—had Rule 41 and the warrant's October 11 cutoff been honored."[92]

Rule 41(e)(2)(C) states that the warrant must "specify a reasonable length of time that the device may be used" and that such time "must not exceed 45 days from the date the warrant was issued." FED. R. CRIM. P. 42(e)(2)(C). The following sentence of Rule 41(e)(2)(C) explains that "[t]he court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each." *Id.*

The government's Rule 41 error was its failure to recognize that an extension was necessary and seek such extension. *Cf. United States v. Rigmaiden*, No. 08-814, 2013 WL 1932800, at *29 (D. Ariz. May 8, 2013). "If the rule had been followed," *Comstock*, 805 F.2d at 1206–07, the government would have obtained the extension, and the GPS location search would have still occurred, albeit, possibly at a different time. *Cf. Rigmaiden*, 2013 WL 1932800, at *29 (finding that the defendant had "not shown the requisite prejudice" because "[t]he government erred in not seeking an extension of the warrant . . . . If the government had not made this error—if it had obtained the extension—all of the evidence . . . would have been found under the Amended Warrant.").

The fact that there is evidence in the record to support that the extension for good cause would have been granted had it been sought, undermines a finding that Burns was prejudiced. U.S. Magistrate Judge Currault granted Agent Hodge's request for a tracking warrant based on the information in his accompanying affidavit

---

[92] *Id.* at 7 (citing *Comstock*, 805 F.2d at 1207).

that Burns regularly traveled to Houston to obtain narcotics for distribution, typically making quick, repeated trips between Louisiana and Texas every 9–10 days.[93] The GPS location data collected within the authorized period is consistent with this pattern: Burns took four such trips to Texas during the 45-day period authorized by the warrant.[94] For the last of these trips, Burns left Louisiana on September 21, 2025, and remained in Texas until October 13, 2025—two days after the GPS warrant expired.[95] There is nothing in the newly developed evidence that suggests that the issuing Magistrate Judge would not have found "good cause" to extend the GPS tracking warrant. *See* FED. R. CRIM P. 41(e)(2)(C). The record before the Court therefore suggests that Burns was not prejudiced by the GPS search on October 13th.

Burns's argument that the traffic stop and search of his vehicle "'might not have occurred' in the same manner—or at all"[96] is otherwise irrelevant. The search that Burns must establish "might not have occurred . . . if the rule had been followed" is the GPS tracking search to discover Burns's location on I-90. As explained, he has not established that the GPS search would not have occurred had the government sought the requisite extension. The Court does not ask whether the search and seizure of evidence from Burns's vehicle might have occurred; the derivative evidence

---

[93] R. Doc. No. 25-2, at 4–5.
[94] R. Doc. No. 25-3, at 42 (Louisiana to Texas on August 31, 2025); *id.* at 89 (Texas to Louisiana on September 3, 2025); *id.* at 133 (Louisiana to Texas on September 10, 2025); *id.* at 153 (Texas to Louisiana on September 12, 2025); *id.* at 176 (Louisiana to Texas on September 17, 2025); *id.* at 189 (Texas to Louisiana on September 19, 2025); *id.* at 203 (Louisiana to Texas on September 21, 2025).
[95] *Id.* at 203, 246.
[96] R. Doc. No. 31, at 7 (citing *Comstock*, 805 F.2d at 1207).

rule is not triggered for Rule 41 violations that do not reach constitutional proportions. *Tedford*, 875 F.2d at 451. Moreover, Burns has provided nothing to suggest that the chain of events that followed the GPS search—namely, Agent Hodge contacting Trooper McKee, Trooper McKee's observation of the alleged traffic violations, Trooper McKee's attempt to stop and then pursue Burns, Burns throwing the white bag out of his passenger window, and the search of his vehicle—would not have occurred as it did, had Agent Hodge sought the extension required by Rule 41.

Because the Court finds that Burns has not met his burden pursuant *Comstock*, suppression is not warranted.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion is **DENIED**.

New Orleans, Louisiana, April 6, 2026.

_____
        **LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**